UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Crim. No. 16-10258-ADB |
| | * | |
| FRANCIS P. SALEMME and | * | |
| PAUL WEADICK. | * | |

**MEMORANDUM AND ORDER**

November 9, 2016

BURROUGHS, D.J.

## I. Introduction

On September 1, 2016, Paul Weadick (the "Defendant") was charged in a one count indictment with murdering a witness in violation of 18 U.S.C. § 1512(a)(1)(C). [ECF. No. 16]. At his arraignment on September 2, 2016, the government moved for detention and a detention hearing was held on September 8, 2016. On September 14, 2016, Magistrate Judge Cabell issued a detention order in which he found "by a preponderance of the evidence that the defendant's release would pose a risk of nonappearance at court proceedings, and by clear and convincing evidence that the defendant's release would pose a risk of harm to the public." [ECF No. 37]. He concluded that the conditions for release proposed by Defendant "are insufficient to mitigate the risks posed by his release, particularly in light of the nature and circumstances of the charged offense, the defendant's prior criminal history and the defendant's association with individuals suspected of having engaged in serious criminal behavior." Id.

Thereafter, on September 15, 2016, Defendant appealed, seeking to have the order of detention reviewed and revoked. [ECF No. 38]. The government opposed the motion. [ECF No. 40]. For the reasons explained herein, Defendant's motion [ECF No. 38] is DENIED.

## II.  Factual Background

The following facts are taken from the Pretrial Services Report ("PSR"), the pleadings filed by both parties in connection with the issue of detention, including Massachusetts State Trooper John Fanning's sworn affidavit, [ECF. No. 32 (hereinafter, "Fanning Aff.")], and from the transcript of the September 8, 2016 detention hearing before Judge Cabell, [ECF. No 34 (hereinafter "Hearing Tr.")].

Defendant, age 61, was born and raised in Massachusetts, and he currently resides in Burlington, Massachusetts with his wife and 12-year old daughter. PSR at 1. He was convicted in the early 1980s of Manslaughter in the First Degree in connection with the murder of Joseph Mistretta, who was shot and subsequently found dead in the trunk of a car. Hearing Tr. 6:16–21.[1] Defendant was paroled in 1986, but was soon arrested in New Hampshire for his participation in a "drug rip-off" with Frank Salemme, Jr., who was a known associate of the New England La Cosa Nostra (NELCN). August 31, 1987 Parole Violation Report [ECF No. 40, Ex. 2]. The New Hampshire arrest was deemed to be in violation of the conditions of his parole and, as a result, Defendant was returned to prison where he remained until his eventual release in 1989. [ECF. No. 40, Exs. 2, 3].

According to Trooper Fanning's testimony at the detention hearing, Defendant started working and associating with Frank Salemme, Jr. and his father, Frank Salemme, Sr. shortly after his 1989 release from prison. Hearing Tr. 7:6–15. Frank Salemme, Sr. was the then boss of the NELCN. Id. The government alleges that Defendant soon became a manager at The Channel, a South Boston nightclub in which the Salemmes had an interest. Fanning Aff. ¶ 4; Hearing Tr.

---

[1] It appears that the date of the Defendant's manslaughter conviction is incorrect in the PSR, but Trooper Fanning's recollection of the year is consistent with the August 31, 1987 Parole Violation Report. [ECF No. 40, Ex. 2]. The PSR also does not list that the Defendant was paroled in 1986, which the Parole Violation Report does.

2

8:6–12; see also PSR at 2. In the early 1990's, facing increased law enforcement scrutiny, the Salemmes allegedly became concerned that Steven DiSarro, one of their associates at The Channel, might cooperate with authorities. Fanning Aff. ¶ 5.

DiSarro disappeared on or about May 10, 1993. Hearing Tr. 12:5–21. Eyewitness testimony suggested that he had been murdered and implicated the Defendant. Fanning Aff. ¶ 5. According to Trooper Fanning, Stephen Flemmi, a self-admitted longtime criminal associate of Salemme, stated that he observed Defendant holding DiSarro's legs off the ground while Salemme, Jr. strangled DiSarro. Hearing Tr. 9:7–15; Fanning Aff. ¶ 5. A recent interview with Robert Deluca, a captain in the NELCN, also implicated Defendant in DiSarro's murder. Fanning Aff. ¶ 6. DiSarro's remains were recovered in March 2016, buried behind an old mill building in Providence, Rhode Island. Fanning Aff. ¶¶ 2, 6; Hearing Tr. 11:15–12:4.

Moreover, Trooper Fanning testified that David Modica, Defendant's employer for the last 11 years, has been linked to known NELCN associates through pen registers and surveillance. Hearing Tr. 13:15–19; PSR at 2 (stating that Defendant has been employed with Modica Associates for the last 13 years).

**III.   Discussion**

Under the Bail Reform Act, upon a motion by the government, a defendant must be detained pretrial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In making this determination, the court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

>  (2) the weight of the evidence against the person;
> 
>  (3) the history and characteristics of the person, including—
> 
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> 
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> 
>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). To show that detention is warranted, the government must prove by a preponderance of the evidence that the defendant poses a risk of flight or by clear and convincing evidence that the defendant is a danger to the community. See United States v. Patriarca, 948 F.2d 789, 792–93 (1st Cir. 1991); see also United States v. Debrum, No. 15-10292-NMG, 2015 WL 6134359 at *4 (D. Mass. Oct. 19, 2015). District courts review challenges to a magistrate judge's pretrial detention order de novo. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000) (citing United States v. Tortora, 922 F.2d 880, 883 n. 4 (1st Cir. 1990)); see also United States v. Rose, No. 11-10062, 2012 WL 2500497, at *1 (D. Mass. June 26, 2012); United States v. Hernandez, No. 14-10367, 2015 WL 4448094, at *2 (D. Mass. July 20, 2015). After having carefully reviewed the record before Judge Cabell, the Court finds that the government proved, by clear and convincing evidence, that no conditions short of pretrial detention would reasonably assure the community's safety, and by a preponderance of the evidence that Defendant poses a flight risk.

The offense charged against the Defendant is serious and involved violence. A grand jury has found probable cause to believe that the Defendant committed the crime. Defendant has a

prior conviction for first-degree manslaughter in the murder of Joseph Mistretta. Following his release from prison, he immediately associated with the Salemmes, the elder of whom was the then boss of the NELCN. Although the Defendant has worked for at least the past eleven years, his boss too seems to be connected with the NELCN. Hearing Tr. 14:1–7. Defendant's personal history, "the nature and circumstances of the charged offense," which involves the murder of a federal witness, and the weight of the evidence establishes, by clear and convincing evidence, that releasing the Defendant from detention would jeopardize the lives and safety of other witnesses and the public, and that there is no condition or combination of conditions that would reasonably assure the safety of the community.

Further, the government has proven by a preponderance of the evidence that the defendant poses a risk of flight and that there is no condition or combination of conditions that would reasonably assure the Defendant's appearance. Although Defendant appears to have resided in Massachusetts for his entire life, he has ties to the NELCN and members of this organization have previously demonstrated the means and willingness to flee to avoid prosecution. See Fanning Aff. at ¶ 10. Furthermore, if he is convicted, Defendant faces a sentence of up to life in prison, which is a powerful incentive to flee. Based on these factors, the Court agrees with Judge Cabell that no condition or combination of conditions short of detention would reasonably assure the safety of the community or Defendant's appearance at future proceedings.

IV. **Conclusion**

For the foregoing reasons, Defendant's motion to revoke the detention order entered on September 14, 2016 [ECF No. 38] is <u>DENIED</u>.

**So Ordered.**

Dated: November 9, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE
